**MINUTE ENTRY**
**KNOWLES, M.J.**
**APRIL 29, 2008**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EVAN F. TRESTMAN, et al** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-11400 c/w 07-1305** |
| **AXIS SURPLUS INSURANCE COMPANY** | **SECTION  "E" (3)** |

On April 29, 2008, One River Place Condominium Association, Inc.'s **Motion to Compel #99** came on for oral hearing in Chambers.  Present were Howard Sinor, Donna Currault and Stephanie Toups on behalf of One River Place ("ORP") and Eugene T. Rhee on behalf of Axis Surplus Insurance Company.  The matter was again the subject of argument on this date following a brief status/settlement conference.  Having considered the premises, the undersigned GRANTS ORP's motion to compel #99 in large part, all as more specifically set forth below.

**BACKGROUND**

On March 15, 2007, in consolidated suit No. 07-1305, One River Place ("ORP") sued Axis Surplus Insurance Company and others, regarding Hurricane Katrina-related damages (property damage and loss of business income).  Axis' policy has coverage limits of $53,350,000.00.  ORP alleges both property damage and loss of business income, due to its

1

MJSTAR(00:13)

inability to collect the monthly assessment and operate the insured property during the months following Hurricane Katrina.  Plaintiff's claim includes the following items of damages, to wit: $4,513,203.76 construction repairs, $296,395.04 business interruption, $360,000.00 emergency repairs and $95,000.00 elevator repairs.

On October 11, 2005, Axis forwarded a $300,000.00 check which ORP believed was two month's business interruption loss for the expected two month period.  ORP further alleges that in May of 2006, Axis determined the full extent of ORP's damages  in the amount of $972,494.00.

After providing ORP with a  payment in the amount of $300,000.00 in October 2005 as business interruption proceeds, Axis later deducted this payment from estimated costs to repair physical damage.   ORP contends that it was advised that, despite Axis' initial assessment as to business loss coverage, it later requested an opinion as to that coverage and determined that it did not apply to the claimed loss.  The business interruption claim was then denied.

ORP alleges that, in light of the plain terms of the policy, *inter alia,* Axis' denial of business interruption loss coverage constitutes bad faith.  Plaintiff further alleges that the defendant wrongfully attempted to cancel its excess policy on March 23, 2006 in violation of the Louisiana Department of Insurance Emergency Rule 23.  Dissatisfied with the defendant's adjustment of its property loss, ORP engaged Ladd Ehlinger to inspect the condition of the property, recommend corrective measures and provide the engineering estimate to repair and restore the property.  Axis was allegedly  provided with detailed spreadsheets and a demand for the full amount of the policy (over $5 million).  Plaintiff claims that, as of the time that its petition was filed, Axis owed $3,626,886.80 for property damages, business income and other

2

losses covered under the policy.  ORP claims the full menu of bad faith damages and attorney's fees.

## ORP's MOTION TO COMPEL

On August 22, 2007, ORP propounded interrogatories and requests for production of documents to Axis.  On January 16, 2008, Axis provided responses which ORP contends are deficient in a number of particulars discussed serially below.  It highlights that Axis produced only one email and did not produce any documents evidencing internal communications regarding One River Place.   ORP seeks production of all documents reflecting communications regarding ORP, including Axis' computerized tracking log reflecting communications and/or action taken that relates in any way to ORP and its claim.  In its reply brief, ORP reiterated that there is no privilege log as required by Fed. R. Civ. P. 26(b)(5)(A) and noted that no representative of Axis signed the responses as required by Rule 33(b)(5).

## INTERNAL COMMUNICATIONS
## WAIVER OF PRIVILEGE

ORP's Interrogatory Nos. 3, 4 and 5 and corresponding Requests for Production 1, 5 and 6 seek the identification and production of documents relating to communications between Axis and any other person, as well as internal communications at Axis relating in any way to ORP, the Claim, the Policy, the Occurrence, the Loss and/or acts of civil authority from August 20, 2005 to October 31, 2005.  Additionally, Interrogatory Nos. 12, 13 and 14 seek information regarding Axis's investigation of ORP's business interruption claim.  Axis objected on the grounds of attorney client communications and work product immunity but failed to produce a privilege log or in any way identify what documents exist such that ORP may evaluate the propriety of Axis' invocation of privilege.  The Court notes that, even as of the date of the hearing, Axis had not

3

constructed a privilege log and tendered the documents to the Court for in camera review.

Of particular interest is an opinion letter penned by Axis' counsel of record, which it contends is clearly an attorney client communication and work-product.  ORP argues that the privileges have been waived by (1) Axis' failure to produce a privilege log, (2) Axis' placing the attorney advice/communication at issue and (3) Axis' disclosure of a *significant* portion of the substance of that privileged communication to ORP.

Louisiana law applies to this claim and, under Louisiana Cod of Evidence article 502(A), "[a] person upon whom the law confers a privilege against disclosure waives the privilege if he voluntarily discloses or consents to disclosure of any significant part of the privileged matter." La. Code of Evid. Art. 502(A).  In the seminal case, *Succession of Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138 (La. 1987), the Louisiana Supreme Court addressed partial disclosure in the pretrial context and stated that "it may cause unfairness comparable to partial disclosure at trial in that it distorts an opponent's settlement evaluations and obstructs his ability to prepare effectively for trial."  *Succession of Smith*, 513 So. 2d at 1145.

In a June 14, 2006 letter to ORP (Exhibit "C"), Axis' adjuster informed ORP that:

> "AXIS requested a coverage opinion from counsel in regards to the voluntary abatement of condominium fees during the months of September and October 2005.  Counsel has reviewed the policy as well as the applicable law and has advised AXIS that the fees will not be covered for the following reasons:
> (1) ... it was caused by the association's voluntary act...;
> (2)The voluntary waiver of assessments falls with the "any other consequential loss" exclusion...;
> (3)The assessment could also be subject to the "suspension of any contract" exclusion...; and
> (4) ORP arguably violated the resumption of operations and mitigation of damages clauses in the policy as the waiver actually increased its damages.
> **For the above stated reasons AXIS Surplus Insurance Company is denying liability for the waived association fees during the months of September and October of 2005.**"

GAB Robins' W. Van Meredith June 14, 2006 Correspondence issued on behalf of AXIS to

ORP's Mr. David Lafaso (emphasis added) [ORP's Exhibit "C" to Reply Brief/Doc. No. 102-6].

       The aforesaid communication selectively discloses  a significant portion of the substance

of that otherwise privileged communication (an opinion letter) and states that it is for these

reasons (reasons set forth in the opinion letter) that Axis denied liability for the waived

association fees.  Such partial disclosure effects a limited waiver of any potential privilege for

the subject matter.  *See* La. Code Evid. 502(A); *Consolidated Health Plans, Inc. v. PPG, Inc.*,

No. 02-cv-1230, 2003 WL 1193663 (E. D. La.  March 14, 2003) (Knowles, M.J.).   This case is

substantially similar to the situation presented in *Consolidated Health Plans, Inc*., *supra*,

wherein the record more than amply established the existence of the attorney-client privilege as

to communications between counsel for CHP and the corporate plaintiff itself.

       Like PPG in the cited case, ORP has successfully demonstrated both waiver by Axis'

disclosure and by "placing at issue" said communications critical to one of plaintiff's claims (bad

faith) and to many of Axis' defenses.  The June 14, 2006 letter issued on behalf of Axis

specifically acknowledged the existence of an attorney-client relationship.   Then, GAB Robins

*on behalf of AXIS Surplus Insurance Company* revealed information that defendant now claims

to be "confidential" attorney-client communications.  Without question, the correspondence

relates to the denial of coverage of waived homeowners' monthly assessments, the propriety of

same and the bases of AXIS' denial of ORP's business loss claim.

       Turning to the issue of inevitable disclosure, Axis advised ORP in writing that it denied

the business interruption claim based on an opinion letter of counsel.  *See* June 14, 2006

Correspondence [ORP's Exhibit "C"/Doc. No. 102-6].   E-mail correspondence predating the

issuance of the June 14, 2006 letter documents the evolution of adjustment of ORP's business loss claim as well as Axis' confirmation of its denial of certain business loss coverage and the reasons therefor. *See* Email Chain regarding ORP's Business Interruption Coverage Claim including Eustis'/Skinner's April 21, 2006 Email [ORP's Exhibit "E"/Doc. No. 102-8].

Under Louisiana law, a party waives the attorney-client privilege when he "pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication in order to prevail. Consequently, he places at issue and waives privilege as to communications on the same subject under his control."[1] The same waiver concept has been applied to the federal work product protection.[2]

Axis argues that, since it has stipulated that it will not introduce the materials at trial, there is no "anticipatory waiver."[3] While this is true with regard to pre-trial disclosure under *Succession of Smith*, the "placing-at-issue" waiver is entirely different from pre-trial disclosure and such a stipulation would not preclude a finding of a "placing-at-issue" waiver by the court.

The placing-at-issue waiver, which is quite apparent in the case at bar, occurs when the privilege holder pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail. Indeed, Axis' witness list includes W. Van Meredith (GAB Robins Executive General Adjuster), Linda Parham (Axis Senior

---

[1] *Succession of Smith v. Kavanaugh, Pierson & Talley,* 513 So.2d 1138, 1145 (La .1987); *Henricks v. Stumpf*, 613 So.2d 683, 685 (La. App. 5 Cir. 1993); *Merhige v. Gubbles*, 95-1106 (La. App. 4 Cir. 6/29/95), 657 So.2d 1098, 1101; *Dixie Mill Supply Co. Inc. v. Continental Casualty Company*, 168 F.R.D. 554, 556 (E. D. La.1996).

[2] *See Conoco, Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 110 (W. D. La. 1998) (*citing Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992)).

[3] *Merhige*, 657 So.2d at 1101.

6

Claims Specialist), Robert Skinner (Eustis Insurance Co.) and Robert Lofaso (One River Place

General Manager), all of whom figure prominently in the email chain leading up to the June 14,

2006 denial of the subject business loss coverage.  *See* ORP's Exhibit "E"; Axis' Witness and

Exhibit List filed March 7, 2008 [Doc. # 80].  Additionally, Axis' List of Exhibits includes "[a]ny

and all correspondence between One River Place and Axis Surplus Ins. Co," "[a]ny and all

correspondence between Axis and Eustis Ins. Agency," and "One River Place Condo Assn., Inc.

By-Laws and Articles of Incorporation."  *Id*.  Most notably, Axis' defenses include that: (1)

"Axis' actions were *reasonable in light of the circumstances*" (Seventh Defense); (2) "Plaintiff

[is] barred, in whole or in part, for plaintiff's *failure to take reasonable steps necessary to

mitigate its damages*" (Nineteenth Defense); (3) "Plaintiff's claims are barred, in whole or in part

by the *Doctrine of Intervening or Superceding Cause*" (Twenty-First Defense); and (4) "*At all

times* defendant Axis has adjusted the plaintiff's claim in good faith and in accordance with the

terms and conditions of the applicable Axis policy and in compliance with any applicable

statutory and jurisprudential law" (Twenty-Second Defense).  Axis' Answer and Affirmative

Defenses [Doc. # 20].[4]

---

[4]*Compare* Email Correspondence from Robert Skinner/Eustis to Linda Parham/Axis cc'd
to David Lofaso/ORP, *inter alia*, dated May 3, 2006 2:21 PM (noting that "you had previously
said that you would forward my argument for Business Income Insurance to your legal
department *for determination of coverage by AXIS standards*" and asking for a reply) (all
emphasis added) [ORP Exhibit "E"/ORP001000/Doc. #102-8]; Email Response from Linda
Parham dated May 3, 2006 (stating that "[l]egal opinion has not been received as yet") (emphasis
added); Denial Letter dated June 14, 2006 (stating that Axis is denying liability for the waived
association fees for reasons excerpted from counsel's opinion letter -- *i.e*., (1) the loss was caused
by the association's voluntary act, (2) ORP violated the resumption of operations and mitigation
of damages clauses in the policy and (3) the Condo Board's assessment could be subject to the
"suspension of any contract" exclusion, *inter alia*) [ORP's Exhibit "C"/ORP001086-001087/Doc
#102-6].

As a result, the attorney-client privilege is waived as to the subject opinion letter on the subject of coverage of the loss of association fees post-Katrina.[5]  The waiver does not depend solely on the relevance of the privileged material, or on the adversary's need, no matter how strong, for the communication. The focus is on the privilege holder, and the sole concern is whether the privilege holder has "committed himself to a course of action that will require the disclosure of a privileged communication."[6]

In this case, the record more than amply establishes the existence of the attorney-client privilege as to communications between counsel for Axis and the corporate defendant itself. ORP has successfully demonstrated both waiver by partial disclosure of a significant portion of the communication and waiver by "placing at issue" communications critical to both its claim of "bad faith" and *to Axis' defenses.*[7]

Having thoroughly considered the premises, the Court finds a narrow waiver of the attorney-client privilege concerning the subject matter of the disclosure in the June 14, 2006 letter, which reiterated the contents of the "opinion letter" on coverage of association fees immediately post-Katrina.

Turning to the contract between AXIS and GAB and the computerized log/contact tracking record reflecting communications and/or action taken with respect to ORP, the Court agrees that the documents are relevant and discoverable under Rule 26(b)(1).  The undersigned is

---

[5]*Consolidated Health Plans, Inc.*, 2003 WL 1193663 ** 6-7 (*citing Conoco*, 191 F.R.D at 110).

[6]*Id*. (*citing Merhige*, 657 So.2d at 1146 and *Conoco, supra*) (inner quotation marks omitted).

[7]*See* Note 4, *supra*, and accompanying text.

further persuaded  that Axis' production of one e-mail communication appears light in comparison to the collection of e-mails produced by GAB Robins.  *See* Collection of E-Mail Communications (involving Ray Page of Axis Specialty in Alpharetta, Georgia and Linda Parham Axis Senior Claims Specialist) [ORP's Exhibit "B"/Doc #102-5].   Axis' discovery responses are obviously incomplete and should be supplemented forthwith and no later than Wednesday, May 7, 2008.

**SIMILARLY SITUATED  "OTHER INSUREDS"'
BUSINESS LOSS CLAIMS**

ORP's Interrogatory Nos. 16 and 27 and Requests for Production Nos. 19 and 22 seek production of information regarding payment of other similarly situated insured's (condo associations') business loss claims as a result of Hurricane Katrina for the attenuated time period of August 20, 2005 through October 31, 2005.  The geographic parameters of the discovery requests provided by ORP is the Greater New Orleans Area.

Axis objected to the requests as overly broad and irrelevant.  The Court disagrees with both assessments.  Certainly, if Axis paid business loss claims for homeowner's association fees under similar form coverage to other similarly situated insureds (meaning only condo associations) in close geographic proximity to One River Place that could lead to the discovery of admissable evidence.[8]  The request is sufficiently narrowly drawn in that it addresses Hurricane Katrina-related claims of "condominium associations"  for which Axis provided wind, storm and/or business interruption coverage and the small two-month window of August 20,

---

[8]*See* Robert Skinner (Eustis) E-mail Correspondence to Pam Nawrot (CRC Claims Manager) dated April 21, 2006 (stating that "[i]t is my understanding that many clubs and condominium associations in this area are being paid for like situations") [ORP Exhibit "E"/GAB-365/Doc. #102-8].

2005 through October 31, 2005 -- *i.e.*, the pertinent time frame.  Insofar as geography, the scope should be more tailored.  This Court finds that the downtown New Orleans area (where One River Place is located) is more tailored to the circumstances presented.  The downtown New Orleans area includes the Central Business District, the River Walk Area, the Warehouse District and the French Quarter.  This particular area would have been subject to similar wind/water conditions during and immediately after Hurricane Katrina, the same or similar crime patterns post-Katrina, the same or similar government authorities post-Katrina and the same or similar occupancy restrictions and/or conditions post-Katrina.

In the first instance and within the aforesaid more narrowly defined area limited solely to *condo association* "other insureds," Axis shall provide information as to whether any other such similarly-situated insureds were reimbursed condo association fees during the aforesaid pertinent time period.  This information shall be provided to ORP subject to an agreed upon protective order which provides that the information cannot be used outside of the bounds of the instant litigation.  This order does not contemplate production of any "other insured's" files.  This order simply contemplates a "yes or no" answer; then, if yes, information regarding how many such "other insureds" were compensated for such business loss and an indication of the location of each (*i.e.*, CBD, Riverwalk area, French Quarter or Warehouse District).  Axis shall provide the aforesaid information to ORP on or before Wednesday, May 7, 2008.

## AXIS' ENTIRE UNDERWRITING FILE

ORP's Request for Production No. 10 seeks production of Axis' entire underwriting file.  In a supplemental response, Axis' counsel noted that the complete underwriting file was being forwarded for review and that it will supplement the response, if appropriate.  At the time of the

hearing, the Court was informed that Axis' counsel was presently reviewing that file.  No later than Wednesday, May 7, 2008 Axis shall provide its underwriting files to counsel for ORP.  Any documents withheld from that file shall be made the subject of a privilege log and provided to the undersigned for *in camera* review.

## INVESTIGATION INTO ACTS OF CIVIL AUTHORITY

ORP's Interrogatory Nos. 12, 13 and 14 and Request for Production No. 20 seek information regarding any investigation undertaken by Axis into acts of civil authority.  Axis objected stating that the requested information bears no relation to plaintiff's claim.   The undersigned is inclined to disagree.  Certainly, whether ORP could resume operations and mitigate its damages would be affected by acts of civil authorities in the area.   Accordingly,  on or before Wednesday, May 7, 2008, Axis shall provide ORP with responses to the aforesaid requests. Any documentation withheld subject to a claim of privilege shall be made the subject of a privilege log and produced to the undersigned for *in camera* review.

## POLICIES AND PRACTICES

ORP's Interrogatory No. 7 and Requests for Production Nos. 14 and 15 seek information regarding Axis' practices and policies.  Axis submits that it is not in possession of any such lesson plans, guidelines, protocols, videos or training materials regarding how to adjust business interruption claims.  Considering the slight e-mail production, Axis is directed to make a good faith inquiry into whether any such materials are in fact within its possession and either confirm their prior response or provide any responsive discovery resulting from its search to ORP no later than Wednesday, May 7, 2008.

11

## COMPLETE COPY OF ALL FILES RE POLICY

As to Request for Production No. 7 which seeks a complete copy of all files regarding the policy in question, Axis submits that it has already produced same.  ORP quips that, given the limited production and based upon its review of communications produced by others, it is patently clear that Axis has NOT produced a complete copy of all files regarding the Policy, including but not limited to any claims, analysis, adjustments, reviews, reports and other documents regarding the Insured Property.   Again, Axis is directed to make a good faith search of all of the likely repositories of documents, including electronically stored information, and to supplement its response in this regard on or before Wednesday, May 7, 2008.   Indeed, if there is a particular report or review referred to in correspondence gleaned from others, ORP should specifically identify same as it did in the case of Axis' computerized log/contact tracking record reflecting communications and/or action taken with respect to ORP.

Accordingly and for all of the above and foregoing reasons,

**IT IS ORDERED** that ORP's Motion to Compel # 99 is GRANTED, all as more specifically set forth herein above.  As aforestated,  Axis shall supplement its responses in the particulars mentioned above no later than Wednesday, May 7, 2008.  Documents withheld shall be made the subject of a privilege log and produced to the undersigned for in camera review.   Axis shall amend their prior discovery responses previously provided such that they comport with the dictates of Rule 33(b)(5).

12

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**